

Paul McCarthy bar no 139497
2150 Folsom#7A
San Francisco, CA 94110-1320
Tel. (415) 702-7260
Attorney for *Creditor*
*Margaret Eve-Lynne Miyasaki*

United States Bankruptcy Court
for the Northern District of California
San Jose Courthouse

In re

BEATRICE LUI,

Debtor.

No. **12-55239 SLJ13**
Chapter 13

OBJECTION TO MOTION TO SET PROPERTY VALUE AND REQUEST FOR DENIAL OF MOTION AS PREMATURE, OR TO SET A DATE FOR HEARING

**OBJECTION TO MOTION TO SET PROPERTY VALUE AND REQUEST FOR DENIAL OF MOTION AS PREMATURE, OR TO SET A DATE FOR HEARING**

1. Description of creditor's claim

Margaret E. Miyasaki holds a judgment lien of $89,558.67 based on her March 20, 2012 civil judgment against the debtor. Her claim for $92,380.77 includes interest on the judgment up until the filing of the Chapter 13 petition. Miyasaki's judgment is based on a $50,000 5 year promissory note that the debtor gave to Miyasaki's late father, Richard Graber, on June 1 2005 as partial payment of a $450,000 purchase price for the family home located at 241 Serena Way, Santa Clara, California, now the debtor's major asset. Miyasaki's father assigned the note to Miyasaki in 2005. The note became due on June 1, 2010 in the amount of $65,000, the additional $15,000 representing interest over the five years. The debtor has never made any attempt to pay any portion of the note, and in the state civil proceeding, took the position that the note was a mere formality that she had never expected to have to pay.

Miyasaki is a 61 year old individual whose only substantial asset is the judgment against the debtor.

Under the debtor's proposed "Chapter 13 plan", Miyasaki is to get nothing, along with a sizeable number of other creditors, mainly lenders on credit cards.

**2. Proceedings concerning the debtor's motion to set the value of the property.**

The bankruptcy petition, filed on July 13, 2012, listed the Miyasaki debt as an unliquidated claim and, although it listed the exact amount to the penny of the March 20, 2012 judgment, did not acknowledge the judgment's existence.

On July 19, 2012, before any of the creditors had filed any proof of claim, the debtor filed a motion to set the property value of the sole parcel of real estate debtor owns, 241 Serena Way, Santa Clara, California. (Creditor Miyasaki received her notice of automatic stay at about the same time the debtor filed her motion.)

Debtor's "notice and opportunity for hearing" recites:

"Under Bankruptcy Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed and that any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing of this notice."

Under this notice, any response would be due on or before August 10, 2012.

However, according to the debtor's certificate of service, the motion was served only on the *first mortgagee*, Chase Bank, NA, the Chapter 13 trustee, and the U.S. trustee. *No other creditor was served.* This is significant because the motion seeks to assign such a low market value to 241 Serena Way ($440,000 – $10,000 less than the debtor agreed to pay for the property in 2005) that Miyasaki would be rendered an unsecured creditor despite her judgment lien and she and every other creditor except for the first mortgagee would be shut out.[1] Because

---

[1] Presumably due process principles would keep any valuation resulting from this motion from being binding on creditors who were not served with the motion, like Miyasaki, but the debtor would likely argue anyway that the court's order was presumptive and try to impose some sort of burden on the unserved creditors for challenging any such valuation. (Why else would the debtor bring this motion before any unsecured creditor had appeared in this proceeding?)

2

Miyasaki appears to be the only judgment lien creditor, she is ahead of all of the unsecured creditors and the determination of 241 Serena Way's value is of critical importance to her. The debtor's decision to serve only the first mortgagee essentially renders the motion a sham since the first mortgagee would presumably not object to a valuation that would allow it to collect or retain its lien on 241 Serena Way.

The only "notice" that Miyasaki, the major "unsecured" creditor, received from the debtor, as indicated above, was a general notice that the bankruptcy had been filed. Miyasaki is only aware of this motion because counsel reviewed and downloaded all of the filed documents on the court docket. Miyasaki filed her proof of claim on July 30, 2012 and served a copy on the debtor's attorney. Following the filing of her proof of claim, the debtor sent Miyasaki a notice of the first meeting of creditors, but *not* a copy of any of the moving papers concerning the motion to set the property value.

### 3. The debtor's appraisal

The $440,000 value was calculated in a difficult to read appraisal that was prepared on April 7, 2012. The appraisal in the record has been printed in tiny type and what appears to be deliberately poor print quality. Counsel has attempted to create a more readable version of the debtor's appraisal by enlarging the document somewhat and attempting to make the text sharper. The debtor's appraisal is attached to the accompanying declaration of counsel as Exhibit "A".

Miyasaki has not had sufficient notice to have an alternate appraisal prepared. However, Miyasaki and counsel have located two on-line appraisals of 241 Serena Way, both of which are for substantially more than the value the debtor would have the court assign to the property. According to these two public sources, the debtor's appraisal has been undervalued by between $78,000 to $100,000!

: Homes (http://www.homes.com/Home-Prices/ID-100003649617/241-SERENA-WAY/) lists a July 30, 2012 estimated value of *$518,000* that had declined from *$600,000* over the past

year. (Exhibit "B").

Zillow (http://www.zillow.com/homedetails/241-Serena-Way-Santa-Clara-CA-95051/19600587_zpid/) shows an estimated value for 241 Serena Way of *$563,559.00*, over $100,000 more than the value proposed by the debtor, as of August 5, 2012. (Exhibit "C".)

The details in the debtor's appraisal that attempt to support this low value are inaccurate and misleading. The appraisal treats 241 Serena Way as being part of a neighborhood of single family residential homes that are "*10-35 miles*" from "employment centers" and claims that a single family residence is the "highest and best use and the legal zoning of the property." (Page 1, Exhibit "A") The appraiser bases the value of 241 Serena Way almost exclusively on the existing structure on that land rather than the value of the land itself, despite the property's generous lot size of over 8500 square feet (dimensions of 60 x 143 feet), which is larger than many suburban lots. Indeed, the lot sizes on Serena Way are so large than many of them have two separate houses on the property. (See Exhibit "E", showing that many of the neighboring lots in fact have two separate houses on them.)

The appraisal report also lists only one house on Serena Way, 251 Serena Way, as a comparable that sold on June 8, 2011 for $522,000. It does not mention 171 Serena Way, a house on a lot the same size, mentioned in both the Homes and Ziller on-line reports, that sold later, on September 14, 2011 for $542,000. Instead, the appraisal relies on properties from other neighborhoods that, as will be shown below, are not comparable at all. [2]

Finally, the appraisal contains the following disclaimer:

> "Intended Use: This appraisal report is intended for the use of Beatrice Lui, and his/her assigned (Lawyer), to assist the client in determining the fair market value for possible bankruptcy purposes only, and not a federally related transaction."

Page 1, Exhibit "A". Presumably, the appraiser means that his appraisal would not be sufficiently reliable for use in securing a Federally insured home loan for determining its value as an asset in a tax related proceeding.

---

[2] Of the four "comparables" described, for example, two are much smaller lots, at 5,000 square feet and 5,724 square feet, respectively.

4

### 4. The reality

Miyasaki has attached the zoning map for the City of Santa Clara and a detail map showing Serena Way as Exhibit "D". The detail map shows how inaccurate the debtor's appraisal is. Serena Way is *not* a typical single family home residential neighborhood, even typical of Santa Clara. It actually a residential *enclave* in the midst of surrounding commercial businesses, offices, and medium density apartments. 241 Serena Way is the sixth lot from Stevens Creek Boulevard on the left hand side (see excerpt from Google Maps, exhibit "E".) Serena Way is made up of large, over 8,500 square foot lots, a significant detail since, as is discussed below, this makes them eligible for medium density residential zoning despite the present land use as single family residences.

The appraiser's claim that the property is "10-35 miles away" from "employment" centers makes the property sound as if it was located up in the remote Santa Cruz mountains. The appraiser's claim is not technically "false", but almost meaningless, since in the crowded Bay Area one can always find *some* employment center 10-35 miles away from the property – perhaps in Palo Alto, Hayward, or Gilroy. It suffices to say that the property is about *three hundred feet* from the thoroughfare-commercial zone of Stevens Creek Boulevard, and a *little over a mile* from the retail employment centers of Westfield Shopping Center and Santana Row.

That Serena Way is in the midst of commercial and apartment properties suggests that this street is a candidate for rezoning to denser uses. This unique location also shows that the appraiser's use of single family homes from other areas as "comparables" is meaningless, since the other properties are not located in areas trending toward higher density land use and are thus not "comparable" at all. And, indeed, the Santa Clara General Plan contemplates that Serena Way will be transitioning from single family residential to "medium density residential", a designation that permits 3-4 units for lots above 8,500 square feet (see Santa Clara Ordinance 18.20.120.). Under the earlier 1992 General Plan, 241 Serena Way was designated for rezoning to "Thoroughfare- Commercial" an even more intense land use. (Exhibit "F".) The 2010

General Plan's change to "medium density residential" was intended to provide a orderly transition of the area to denser land use that would be more compatible with remaining existing single family homes. (see Exhibit "F.") The General Plan's designations are not merely academic since they indicate that the City of Santa Clara likely to approve an application to rezone 241 Serena Way to "medium density residential" use.

Lack of notice and time prevent Miyasaki from obtaining a probable value of 241 Serena Way if it was rezoned to medium density residential. Presumably, property on which 3-4 units could be built would be considerably more valuable than its present use of a single house. The existing 64 year old structure was built before Miyasaki was born and is clearly not the "highest and best use" for the property.

Since only two creditors have filed proofs of claim and the first meeting of creditors has not even been held, Miyasaki respectfully requests that the court deny the debtor's motion to value the property at $440,000 without prejudice as premature and direct the debtor not to refile it until a meaningful opportunity can be provided for the creditors to be heard – such as after the time for filing proofs of claim have expired, or at the very least, some time after the first meeting of creditors. The publicly available information located by Miyasaki and her counsel suggests that, at the debtor's request, the debtor's appraiser deliberately undervalued the property for the motion's stated purpose of depriving creditors like Miyasaki of any compensation for their legitimate claims. Neither Miyasaki nor any other creditor besides the first mortgagee was provided with the notice required by Bankruptcy Local Rule 9014-1, and, as the petition indicates, the debtor has had the addresses of the creditors and could have given them notice if she had wanted to do so. The court should not approve the debtor's attempt to deprive the creditors of their valuable property rights without the prior notice and meaningful opportunity to be heard required by due process of law.

If, however, the court is unwilling to deny the motion as premature, Miyasaki requests that the court set a hearing on the motion.

Dated: San Francisco, California, Tuesday, August 7, 2012.

*[signature]*
Paul McCarthy
Attorney for Creditor Margaret E. Miyasaki

7

Objection to Motion to Set Property Value and Request for
Denial of Motion as Premature, or to Set a Date for Hearing